UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LAURIE STUBBS                                    CIVIL ACTION

VERSUS                                           NO. 07-3821

MICHAEL J. ASTRUE, COMMISSIONER                  SECTION "R" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Laurie Stubbs, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for disability

insurance benefits ("DIB") and supplemental security income benefits ("SSI") under

Titles II and XVI, respectively, of the Act.  42 U.S.C. §§ 405(g), 423, 1381a.  This matter

was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and

Local Rule 73.2E(B).

As ordered, plaintiff filed a timely Memorandum of Facts and Law.  Record Doc.

No. 14.  Defendant filed a timely reply memorandum.  Record Doc. No. 17.

I.    PROCEDURAL HISTORY

Stubbs filed an application for DIB on January 18, 2005, alleging disability due

to attention deficit hyperactivity disorder ("ADHD"), depression and anxiety disorder

with panic attacks since December 27, 2004.  (Tr. 67-71, 145-47).  After her application was denied, plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on March 12, 2007.  (Tr. 148-70).  On March 29, 2007, the ALJ issued a decision denying plaintiff's application.  (Tr. 16-37).  After the Appeals Council denied review on June 26, 2007, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.  (Tr. 3-5).

II.   STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.   The ALJ erred by failing to make any specific findings regarding plaintiff's ability to sustain full-time gainful employment over a significant period of time.

B.   The ALJ's assessment of plaintiff's credibility was vague, ambiguous, overly broad and conclusory.

C.   The ALJ applied an improper legal standard by re-defining the term "moderate" in a psychiatric context in a way that rendered the term equivalent to "mild" or "none."

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.   Plaintiff has medically determinable "severe" impairments of bipolar disorder; ADHD, by history; and generalized anxiety disorder, which do not meet or equal any listed impairments found at 20 CFR, Part 404, Subpart P, Appendix 1.

2.   Stubbs has no limitations on her physical residual functional capacity.

3.    She has mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration.

4.    Plaintiff is moderately limited in her abilities to understand, remember and carry out detailed instruction; maintain attention and concentration for extended periods; interact appropriately with the public; and respond appropriately to changes in the work setting.

5.    Her medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.  Her allegations concerning her mental limitations are not consistent with her treatment history and the evidence concerning the severity of her mental impairments, and her allegations exaggerate the severity of the effects of her impairments.

6.    She cannot perform her past relevant work as a bank teller or licensed practical nurse ("LPN").

7.    Considering her age, education, work experience and residual functional capacity, there are jobs that exist in the national economy that Stubbs can perform.

(Tr. 21-35).

IV.   ANALYSIS

      A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate

3

legal standards in evaluating the evidence.  <u>Perez v. Barnhart</u>, 415 F.3d 457, 461 (5th Cir. 2005); <u>Waters v. Barnhart</u>, 276 F.3d 716, 716 (5th Cir. 2002); <u>Loza v. Apfel</u>, 219 F.3d 378, 390 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Perez</u>, 415 F.3d at 461; <u>Loza</u>, 219 F.3d at 393.  This court may not "reweigh the evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."  <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  <u>Id.</u>

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  <u>See</u> <u>Arkansas v. Oklahoma</u>, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  <u>Perez</u>, 415 F.3d at 461.  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  <u>Id.</u>; <u>Newton</u>, 209 F.3d at 452; <u>Martinez v. Chater</u>, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2007). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2] The five-step

_____

[1]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

[2]The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then

5

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez, 64 F.3d at 174.

---

the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (2004) ("Medical-Vocational Guidelines").

B.    Factual Background

Stubbs testified that she had previously worked as a bank teller and then as an LPN.  (Tr. 150).  She said that she had a long history of having many jobs from which she was fired for making errors and failing to complete tasks.  She stated that she "more or less [had] a breakdown" during her last job.  She testified that she had worked at night because she had difficulty being around a lot of people.  She said her nursing supervisor had counseled her about the errors she had made, including a couple of medication errors.  (Tr. 151).  She explained that she quit her last job because she was distracted, was not completing her paperwork and was getting things mixed up.  (Tr. 151-52).  She said she had not worked at all since December 27, 2004.

Plaintiff testified that she had been in treatment for depression and anxiety at the Jefferson Parish Mental Health Center for about two years.  She said she continues to have a lot of anxiety and panic attacks, during which it is hard to breathe and she perspires a lot, and sometimes her chest hurts.  She stated that she has a difficult time completing simple tasks like paying bills, doing housework and going to the store, and that sometimes she has to leave the store because of panic attacks and depression.

Stubbs said her condition has worsened in the last two years.  (Tr. 152).  She testified that she has had anxiety, depression and panic attacks since she was a child, but that they have become severe in the last two years.  She stated that she cannot leave the

7

house much of the time, unless she gets someone to drive her.  She said she currently lives with a friend.  She testified that, since the hurricane, she has been unable to complete the things she needs to do to receive insurance money.  She explained that she gets anxious or distracted when she starts to pay bills and will start several different things, but not complete anything.  She said this happens daily.  (Tr. 153).

Plaintiff stated that she gets distracted by thoughts of all the things that need to be done.  She testified that she has racing thoughts about what is going to happen with her house and the insurance, and she becomes overwhelmed.  She also said that sometimes she cannot get out of bed for days on end because of depression.  (Tr. 154).  She stated that she has difficulty making decisions and finishing simple tasks at times.  She said that sometimes she cannot sleep and other times she sleeps excessively.  (Tr. 155).  She testified that lately she feels tired after sleeping all night, but she thinks that might be a side effect of a recent medication change.

Stubbs testified that she has some good days when she is able to do housework, walk her dogs, work in the garden and go to the grocery store.  (Tr. 156).  She said she averages two or three good days each week.  She defined a bad day as one when she is so depressed that she basically does not get out of bed and is unable to do simple things like taking a bath or fixing her hair.  She said she has often been severely depressed lately, about five days out of seven on average.  (Tr. 157).

As for her social life in the past two years, plaintiff testified that she tries to go to church and to Alcoholics Anonymous meetings, but that sometimes she decides not to go despite having planned to do so.  She said she goes to church about once a month and tries to go to AA at least once a week, but she has a difficult time being around other people because of anxiety.  (Tr. 158).

Stubbs stated that she would not have been able to work a 40-hour week, even at simple repetitive tasks, over the past two years because she cannot get going when she is depressed and because she has severe panic attacks.  (Tr. 159).  She did not think she could have reliably shown up for work on a daily basis and stated that she had been fired from one job because she missed a lot of work and made a lot of errors.  (Tr. 157).

C.    Vocational Expert Testimony

A vocational expert, Crystal Younger, testified at the hearing.  The ALJ asked Younger to assume that plaintiff has moderate limitations in her abilities to understand, remember and carry out detailed instruction; maintain attention and concentration for extended periods; interact appropriately with the public; and respond appropriately to changes in the work setting, when moderate "is defined as more than mild, less than marked, but the individual is still able to function satisfactorily."  (Tr. 160-61).  The vocational expert testified that Stubbs would not be able to perform her past relevant work as a bank teller or as an LPN because a teller deals with the public all the time and

because an LPN experiences a lot of change in the work setting.  (Tr. 161).  However, Younger stated that an individual with those limitations would be able to perform repetitive, standard, unskilled jobs without public contact that are available in the national and Louisiana economies in substantial numbers, such as hand packer and freight and stock laborer.  (Tr. 161-62).

Upon cross-examination by plaintiff's attorney, Younger testified that if a person cannot get out of bed and go to work, she would not be able to perform or keep any kind of job.  (Tr. 162).  She further stated that a person who could not complete assigned tasks or function for up to 80 percent of the work day because of racing thoughts or other reasons would not be able to perform work.  (Tr. 163).  She testified that a person whose concentration was so impaired that she could not perform the functions of a job, even if the job was simply putting 10 items in a box, would not be able to do the job.

Younger testified that her understanding of a marked limitation is one that would preclude doing anything.  (Tr. 164).  She stated that the definitions she uses are marginal, mild, moderate and severe, and that severe means unable to do the job.  (Tr. 164-65).  She said that if severe is the same as marked, then a person with a marked limitation would be unable to perform the job.

Younger stated that she understands a moderate impairment to mean that the person would be able to perform the job, but would probably be the first one laid off if

10

there was a layoff.  She said her understanding of the term moderate as able to do the job but subject to being the first one laid off came from another judge.

Plaintiff's attorney redefined a moderate impairment as more than mild, less than marked, with the occasional inability to complete tasks satisfactorily as equated to time. (Tr. 165-66).  Younger testified that, if that definition means that a person cannot do a particular job within a certain amount of time that does not exceed the work day including average daily and lunch breaks, then the person would not be able to do the job.  (Tr. 166-67).

Younger said that the ability to adapt to changes in the work setting can be a critical function of a job, depending on the job, and that higher skilled jobs tend to involve more changes.  Plaintiff's attorney again redefined moderate as an inability to sustain concentration for up to one-third of a work day.  (Tr. 167).  Younger stated that an individual who is unable to maintain attention and concentration for extended time periods, defined as one-third of the work day or up to three hours of a normal eight-hour day, would not be able to keep a job that required work for eight hours, less usual breaks, because two to three hours would exceed the usual break time.  (Tr. 167-68).

D.     Medical Evidence

I have reviewed the medical records in evidence and the ALJ's thorough summary of the medical evidence.  (Tr. 23-30).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.     Plaintiff's Appeal

        1.     Whether the ALJ erred by failing to make any specific findings regarding plaintiff's ability to sustain full-time gainful employment over a significant period of time.

Plaintiff argues that the ALJ failed to assess whether she could not merely obtain, but could maintain, employment consistently over a significant period of time.  However, the Fifth Circuit in Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003), held that the ALJ need not make a separate finding in every case that a claimant is capable of sustained employment.  That holding was confirmed in Perez v. Barnhart, 415 F.3d 457 (5th Cir. 2005), as follows.

> This court made clear in Frank that "nothing in Watson [v. Barnhart, 288 F.3d 211 (5th Cir. 2002)] suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case."  Rather, "Watson requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms."  Without such a showing, the claimant's ability to maintain employment is subsumed in the [residual functional capacity] determination.

12

Id. at 465 (quoting Frank, 326 F.3d at 620).

Stubbs contends that the ALJ erred because the evidence shows that she has depression and anxiety and that she has good days and bad days.  However, Stubbs "has not offered any [credible] evidence that [her] condition 'waxes and wanes' in intensity such that [her] ability to maintain employment was not adequately taken into account in [her residual functional capacity] determination."  Id. (emphasis added).

The ALJ found plaintiff's allegations of disabling limitations not credible and not supported by the record.  Thus, the ALJ was not required to make separate findings that Stubbs could maintain a job.  Rather, his hypothetical and the vocational expert's testimony are substantial evidence that Stubbs could maintain gainful employment over a substantial period of time.  This assignment of error lacks merit.

> 2.    Whether the ALJ's assessment of plaintiff's credibility was vague, ambiguous, overly broad and conclusory.

Stubbs contends that the ALJ failed to include specific reasons for his finding that plaintiff's allegations regarding her symptoms and functional limitations were not credible.  The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and his evaluation is entitled to considerable deference by this court.  Falco v. Shalala, 27 F.3d 160, 164 & n.18 (5th Cir. 1994); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).  The ALJ's explanation

of his reasons for finding plaintiff not entirely credible is all that is required.  <u>Falco</u>, 27 F.3d at 163-64; <u>Godbolt v. Apfel</u>, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.); <u>accord</u> <u>James J. Flanagan Stevedores, Inc. v. Gallagher</u>, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing <u>Falco</u>, 27 F.3d at 164).

Of course, the "mere diagnosis of a mental impairment (such as depression) does not establish a claimant's disability claims." <u>Martin v. Chater</u>, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing <u>Anderson v. Sullivan</u>, 925 F.2d 220, 222 (7th Cir. 1991)); <u>accord</u> <u>Harris v. Barnhart</u>, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); <u>Estok v. Apfel</u>, 152 F.3d 636, 640 (7th Cir. 1998); <u>Jones v. Sullivan</u>, 954 F.2d 125, 128 (3d Cir. 1991); <u>Arroyo v. Sec'y of Health & Human Servs.</u>, 932 F.2d 82, 87-88 (1st Cir. 1991); <u>Hames v. Heckler</u>, 707 F.2d 162, 165 (5th Cir. 1983).  Plaintiff "must show that she was so <u>functionally impaired</u> by her [diagnosed impairment] that she was precluded from engaging in any substantial gainful activity." <u>Id.</u> (emphasis added); <u>accord</u> <u>Anthony v. Sullivan</u>, 954 F.2d 289, 293 (5th Cir. 1992).

A claimant's own reports of her symptoms, including pain, fatigue and dizziness, are insufficient to establish a medical impairment.  Subjective complaints like these must be corroborated, at least in part, by objective medical evidence.  20 C.F.R. §§ 404.1528(a), 416.928(a), 404.1529(a), 416.929(a); <u>Palomo v. Barnhart</u>, 154 Fed. Appx.

426, 2005 WL 3087881, at *3-4 (5th Cir. 2005); <u>Craig v. Chater</u>, 76 F.3d 585, 592 (4th Cir. 1996); <u>Houston v. Sullivan</u>, 895 F.2d 1012, 1016 (5th Cir. 1989).

The ALJ considered plaintiff's subjective complaints and testimony in light of the entire record, including the objective medical evidence, plaintiff's activities of daily living, and her medications and other treatment. He found that her treatment records from East Jefferson Mental Health Center for the two years preceding the hearing did not demonstrate any significant change from the evaluation that was performed by state agency consulting psychologist Lynette Causey, Ph.D., on April 20, 2005, which in turn was based on the psychiatric consultative examination of Alvin Cohen, M.D., on April 9, 2005.

Dr. Causey found that Stubbs had only mild restrictions of activities of daily living and only moderate difficulties in maintaining social functioning and concentration, persistence and pace. Dr. Causey opined that Stubbs would be able to understand and remember short, simple instructions, locations and work procedures; maintain socially appropriate behavior in a work setting; ask simple questions and request assistance when needed; maintain a work schedule with regular attendance; and make simple, work-related decisions. (Tr. 110). Dr. Causey concluded that Stubbs "maintains the ability to perform simple duties that can be learned on the job in a short period of time and involves things rather than people" (Tr. 110), and that "[h]er allegations are therefore

found to be only partially credible."  (Tr. 124).  Dr. Causey's findings concerning

plaintiff's functional limitations are consistent with Dr. Cohen's evaluation, which stated

that Stubbs had "some impairment" in her ability to perform the usual activities of daily

living and was "somewhat limited" in her social functioning, but had no marked

impairments.  (Tr. 107).

      My review of plaintiff's subsequent treatment records, which are accurately

summarized in the ALJ's opinion, reveals substantial evidence to support the ALJ's

conclusion that plaintiff's condition had not changed significantly since Dr. Causey's

evaluation.  Therefore, the ALJ's explanation of his reasons for finding plaintiff not

credible is sufficient.

      3.    <u>Whether the ALJ applied an improper legal standard by re-defining
the term "moderate" in a psychiatric context in a way that rendered
the term equivalent to "mild" or "none."</u>

      Finally, Stubbs argues that the ALJ erred by defining moderate, which is not

defined in the Commissioner's regulations, in his hypothetical for the vocational expert

"as more than mild, less than marked, but the individual is still able to function

satisfactorily."  (Tr. 161).  Plaintiff argues that this definition eviscerates the concept of

"moderate" so that it equates to "mild" or "none."

      The Fifth Circuit recently rejected a similar argument in <u>Cantrell v. McMahon</u>,

227 Fed. Appx. 321, 2007 WL 557567 (5th Cir. 2007).  In that case, the ALJ had

"defined 'moderate', both in his decision and in the interrogatories directed to the vocational expert, as meaning there are some moderate limitations, but the person can still perform the task satisfactorily'." Id. at *1.

> Cantrell claims that, because "moderate" falls between "mild" and "marked", which are defined in the regulations, it should indicate a greater degree of limitation than that in the ALJ's definition.  Although the term "moderate" is not defined in the regulations or the Program Operations Manual System, Cantrell does not show [that] the definition used by the ALJ conflicts with either.  "Marked" is defined as "more than moderate but less than extreme".  Accordingly, "moderate" is less severe and was not used in a manner inconsistent with the regulations.  Moreover, there is substantial evidence [that] the vocational expert understood the degree of limitation at issue in assessing what level of work a person with Cantrell's [residual functional capacity] could perform.

Id. at *2 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(c)).

Similarly, in Beene v. McMahon, 226 Fed. Appx. 348, 2007 WL 836926 (5th Cir. 2007), when the ALJ used the same definition of moderate, the Fifth Circuit held that

> the critical issue on appeal is not the precise definition of "moderate" but whether the ALJ was properly able to assess Beene's [residual functional capacity] to determine:  whether she was able to perform her past job; or in the alternative, whether there were other jobs available for her in the national economy.  To that end, the ALJ had a vocational expert determine, based on the definition of the [residual functional capacity] found by the ALJ, whether Beene would be employable. . . .  The vocational expert was able to sufficiently incorporate the disabilities outlined by the ALJ and determine that Beene would be able to find employment in the national economy.

Id. at *2 (citations and internal quotation omitted).

In the instant case, Dr. Causey's findings are presented on forms that allowed her to check boxes for each area of functioning under the headings "Not Significantly Limited," "Moderately Limited," "Markedly Limited" and "No Evidence of Limitation in this Category" on the Mental Residual Functional Capacity Assessment, and the headings of "None, Mild, Moderate, Marked" and "Extreme" on the Psychiatric Review Technique, as well as to present a written narrative of plaintiff's limitations and capabilities.  (Tr. 108-10, 112-25).

It is also worth noting that a psychologist, a psychiatrist and the ALJ would be aware of the Global Assessment of Functioning Scale ("GAF"), which "ranges from 90 (absent or minimal symptoms) to 1 (persistent danger of severely hurting self or others, or unable to care for herself)."  Irwin v. Shalala, 840 F. Supp. 751, 759 n.5 (D. Ore. 1993) (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 12 (3d ed. 1987) ("DSM III").  The GAF scale also uses the term "moderate" to indicate that one may be able to work despite moderate limitations, as opposed to someone with a more serious impairment, who probably cannot maintain work.

> Lower GAF scores signify more serious symptoms.  Scores between 31 and 40 indicate "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work)," scores between 41 and 50 indicate "serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)," and scores between 51 and 60 indicate "moderate symptoms (e.g. flat effect [sic] and circumstantial

speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with co-workers)."

Marcotte v. Callahan, 992 F. Supp. 485, 488 n.4 (D.N.H. 1997) (quoting DSM III at 12) (emphasis added). "A GAF score of 61-70 reflects mild symptoms or 'some difficulty' in those areas, but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 30, 32 (4th ed. 1994)).[3] Thus, the understanding of "moderate" in the psychological context is similar to the definition that the ALJ used with the vocational expert.

Based on the medical findings, the ALJ plainly understood that moderate meant more than none or mild, but less than marked. The vocational expert also had reviewed the medical records. It appears that she understood the basis for the ALJ's definition and was able to determine whether an individual with moderate limitations could perform plaintiff's past relevant work. (Tr. 162-66).

Accordingly, this assignment of error lacks merit.

---

[3]In July 2005, plaintiff's treatment team at East Jefferson Mental Health Center completed a treatment plan that assessed her with a previous GAF score of 50 and a current GAF score of 60. (Tr. 135).

CONCLUSION

The ALJ did not err by failing to make specific findings regarding plaintiff's ability to sustain full-time gainful employment over a significant period of time, in his method of assessing plaintiff's credibility or by defining "moderate" as he did. Substantial evidence supports the ALJ's findings.

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __31st__ day of March, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

20